IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH A. McCREADY,           )
                               )
             Plaintiff,        )
                               )  Civil Action No. 06 C 6280
      v.                       )
                               )  Suzanne B. Conlon, Judge
TITLE SERVICES OF ILLINOIS, INC. )
                               )
             Defendant.        )

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff Kenneth McCready sues Title Services of Illinois, Inc. ("TSI") for "wiping" his assignor's prior, perfected security interest in a car to obtain unencumbered title for Hollywood Collision Center, Inc. ("Hollywood Collision"). He brings claims under the Sherman Antitrust Act, 15 U.S.C. § 1-37a (Count I), the Illinois Antitrust Act, 740 ILCS 10/1, *et seq.* (Count II), for the unauthorized practice of law (Count III and IV), for fraud under the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, (Count VI), for slander of title (Count VII), and for tortious interference with prospective economic advantage (Count VIII).[1] TSI moves for summary judgment on all counts and McCready cross-moves for summary judgment on Count VI. For the reasons stated below, TSI's motion is granted with respect to McCready's Sherman Act claim (Count I). McCready's remaining state-law claims are dismissed for lack of subject matter jurisdiction.

**I.    SUMMARY JUDGMENT STANDARD**

---

[1] There is no Count V in McCready's first amended complaint.

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). A genuine issue of material fact exists when, in viewing the record and all reasonable inferences in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Each movant has the burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Batish v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

## II.   LOCAL RULE 56.1

With its summary judgment brief, a movant must submit a statement of material facts consisting exclusively of short, numbered paragraphs supported by specific evidentiary references. N.D. Ill. L.R. 56.1(a). The nonmovant must file a response to this statement. N.D. Ill. L.R. 56.1(b)(3). If the nonmovant disagrees with any fact in its opponent's Rule 56.1 statement, it must respond with a "specific reference[ ]" to evidence that provides a basis for its disagreement. N.D. Ill. L.R. 56.1(b)(3)(B). This implies litigants should not inflate their statements of fact with

the evidence itself. A Rule 56.1 statement is not a forum for legal argument or factual characterizations. *See Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D.Ill. 2000) (Castillo, J.).

In violation of Rule 56.1, McCready repeatedly engages in improper factual characterizations and argument (*see, e.g.*, Pl. Resp. ¶¶ 5, 7-9, 12-15, 17-24, 28-39, 41-48, 50-53). TSI does so too, but to a lesser extent (see, e.g., Def. Facts ¶¶ 3-4, 8, 19, 45). The court considers the parties' Rule 56.1 statements only to the extent they comply with Rule 56.1's requirements. Evidence submitted in any other form will be disregarded. *Smith v. Lamz*, 321 F.3d 621, 683 (7th Cir. 2003); *Malec*, 191 F.R.D. at 583.

### III. BACKGROUND UNCONTESTED FACTS

TSI is an Illinois corporation that assists automotive repair facilities, towing facilities and related entities in the process of enforcing mechanics' liens on unclaimed vehicles. Def. Facts ¶ 5. These liens arise out of unpaid labor and storage charges incurred by customers. *Id.*

Around March 2003, Hollywood Collision, an automotive repair facility, retained TSI to assist with enforcing a mechanic's lien for charges incurred for the towing and storage of an unclaimed 1999 Corvette. *Id.* ¶¶ 6-7. TSI requested a title search for the Corvette from the Illinois Secretary of State's office, and identified Geraldine Rogers as the owner. *Id.* ¶¶ 9-10. The title search also revealed that Curtiss Employees Federal Credit Union ("CEFCU") had a security interest in the Corvette because it loaned Rogers money to buy the car. *Id.* This security interest was reflected on the certificate of title issued on February 1, 2002. *Id.* ¶¶ 9-10, 12.

Rogers and CEFCU were sent a letter (by certified mail) giving notice of Hollywood Collision's lien around April 2003. *Id.* ¶¶ 8, 10. The letter notified the parties that the Corvette would be sold at a certain date and time to satisfy Hollywood Collision's lien. *Id.* ¶ 11. The

letter also stated that if Rogers or CEFCU did not redeem or take possession of the car within 30 days, their interest in the vehicle would be considered waived, and the Corvette would be sold pursuant to Illinois law. *See* Weglarz Decl. Ex. 4.

On April 10, 17, and 24, 2003, notice of the public sale of the Corvette was published in various newspapers. Def. Facts ¶ 14. The notice stated the date, time and place of the public sale – May 12, 2003 at 3:00 pm at Hollywood Collision's place of business. *Id.* ¶ 15. The notice identified the vehicle, the amount of the lien and named Hollywood Collision and Rogers. *Id.* ¶ 16. It also stated that if the vehicle remained unredeemed within 30 days, it would be sold. *Id.* ¶ 17. The vehicle was not redeemed by either Rogers or CEFCU within 30 days after publication of the notice. *Id.* ¶ 18.

According to TSI, Hollywood Collision purchased the Corvette to satisfy its lien at the public sale.[2] *Id.* ¶ 19. TSI was not present at the sale and did not otherwise participate in conducting the sale. *Id.* ¶ 47. TSI did not contact any parties who may have been interested in the Corvette and did not conduct any advertising for the Corvette's sale. *Id.* TSI did not have any agreement with Hollywood Collision restricting the Corvette's sale to any members of the public, nor did TSI have any knowledge that the sale would not be public. *Id.* ¶ 48. TSI did not set the opening bid on the vehicle, did not set any prices for the vehicle, did not arrange any of the terms of the vehicle's sale, and did not accept or reject bids of the vehicle at the sale. *Id.*

A "Mechanic's Lien Affirmation" was completed in order to obtain a certificate of title for the Corvette. *Id.* ¶ 20. TSI filed an affidavit with the Kane County Clerk of the Circuit Court

---

[2] It is unclear where TSI received this information, but it is immaterial to the disposition of this motion.

attesting that the April 4, 2003 letter sent to Rogers was returned as undelivered. *Id.* ¶ 21. TSI submitted documentation to the Illinois Secretary of State's office in order for Hollywood Collision to obtain a certificate of title to the Corvette in May 2003. *Id.* ¶ 22. The Illinois Secretary of State issued a certificate of title naming Hollywood Collision as the owner.

Almost three years later, on May 12, 2006, CEFCU assigned all of its rights and claims arising out of the original loan agreement with Rogers to McCready. *Id.* ¶ 24. McCready claims TSI and Hollywood Collision improperly "wiped" CEFCU's prior perfected security interest in obtaining a new certificate of title for the Corvette.

## IV. DISCUSSION

### A. TSI's Motion for Summary Judgment

#### 1. *Sherman Antitrust Act Claim (Count I)*

TSI argues summary judgment is warranted on McCready's Sherman Act claim because (1) there is no evidence of a contract, combination or conspiracy resulting in a restraint of trade, and (2) McCready is not a proper plaintiff because he cannot establish an antitrust injury or standing. McCready does not respond to any of these arguments. When a party fails to address an argument in his summary judgment brief, it is deemed a waiver. *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (undeveloped argument constitutes waiver); *Palmer v. Marion County*, 327 F.3d 588, 597-599 (7th Cir. 2003) (claims not addressed in a summary judgment opposition brief are abandoned); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001) (non-moving party's failure to raise issue in response resulted in waiver); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999) (arguments not presented in response to summary judgement motions are waived); *but see Nabozny v. Podlesny*,

5

92 F.3d 446, 457 n. 9 (7th Cir. 1996) (non-moving party's failure to raise an issue in response to summary judgment motion does not result in waiver). McCready waived any argument on his Sherman Act claim, as he has made absolutely no attempt to contest any of TSI's arguments. *See, e.g., Warren v. Hotel-Inter Cont'l Chicago*, No. 01 C 04370, 2003 WL 41984, at *6 (N.D.Ill. Jan. 6, 2003) (Hibbler, J.); *Blakely v. Brach & Brock Confections*, 181 F. Supp. 2d 943, 951 (N.D.Ill. 2002) (Bucklo, J.) ("[plaintiff] does not respond, so he has waived any argument in opposition."). But even if McCready is deemed not to have waived arguments in response to TSI's motion, the undisputed facts warrant summary judgment.

Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits concerted anticompetitive activities, including conspiracies, designed to restrain trade unreasonably. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 810 (7th Cir. 1999). To state a claim under Section 1, McCready must show that: (1) TSI entered into a contract, combination or conspiracy; (2) which resulted in an unreasonable restraint of trade in the relevant market; (3) McCready suffered an antitrust injury; (4) McCready is a proper plaintiff to bring a private enforcement action under Section 4 of the Clayton Act, 15 U.S.C. § 15, and (5) the restraint of trade must have affected interstate commerce. *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 524 F. Supp. 2d 1031, 1037 (N.D. Ill. 2007) (Pallmeyer, J.) (internal quotations and citations omitted). TSI argues McCready cannot establish elements 1, 3, and 4.

    a. <u>Contract, Combination or Conspiracy Resulting in a Restraint of Trade</u>.

McCready alleges that TSI and Hollywood Collision conspired to restrict bidding on the Corvette at the public sale. First Am. Compl. ¶ 58. He claims the sale price was reduced, and

that the price of other Corvettes was affected as a result of the agreement. *Id.* ¶¶ 67, 69. TSI argues these allegations are unsubstantiated because at all relevant times TSI acted as Hollywood Collision's agent, precluding a finding that there was a conspiracy resulting in a restraint of trade.

Two separate legal entities constitute a single antitrust entity when they have a "complete unity of interest" so that "their general corporate actions are guided or determined not by two separate corporate consciousness, but one." *Omnicare*, 524 F. Supp. 2d at 1038 (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)). An example of this is a principal/agent relationship. *Id.* There can generally be no conspiracy between a corporation and its agents because both share a unity of interest. *Copperweld*, 467 U.S. at 771; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 4 F.3d 1125 (3d Cir. 1995); *PinkSupply Corp. v. Hiebert, Inc.*, 788 F.2d 1313 (8th Cir. 1986). McCready does not dispute that TSI acted as Hollywood Collision's agent in carrying out the unified goal of enforcing a mechanic's lien on the Corvette. TSI could not have conspired with Hollywood Collision because by virtue of TSI's agency relationship (with the unified goal of enforcing Hollywood Collision's lien), the two were a single antitrust entity.

Nor is there any evidence to support an inference that there was a contract, agreement or conspiracy between TSI and Hollywood Collision to engage in conduct affecting trade or commerce under the Sherman Act. *See* Pl. Resp. ¶¶ 54-58. The agreement was merely for TSI to assist Hollywood Collision in enforcing its lien. It is undisputed TSI had no knowledge, much less an agreement, to determine how the Corvette would be sold at the public sale. McCready has the burden of proof on these issues. He has failed to present any evidence in support of a contract, combination, or conspiracy. Summary judgment must therefore be entered on his

Sherman Act claim. *See Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (to survive a defendant's motion for summary judgment, a plaintiff must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial).

### b. Antitrust Injury and Standing

To bring suit for an antitrust violation, McCready must have sustained an antitrust injury that gives him "antitrust standing" (as distinguished from Article III standing). McCready must demonstrate that his injury is of the type antitrust laws were intended to prevent and that the injury flows from TSI's unlawful acts. *Kochert v. Greater Lafayette Health Servs, Inc.*, 463 F.3d 710, 716 (7th Cir. 2006) (citations omitted). Under this standard, McCready cannot establish an antitrust injury. He contends his injury stems from losses sustained from his assignment of the loan agreement between Rogers and CEFCU (rather than the value of the Corvette). Pl. Resp. at 13. The alleged conspiracy between TSI and Hollywood Collision is a manipulation of the Corvette's sale price at the public sale. First Am. Compl. ¶ 58. There is absolutely no connection between the sales price of the Corvette at the public sale and losses arising from CEFCU's unpaid loan contract. Nor is there any evidence indicating a negative effect on competition in the Corvette sales market as a result of TSI's conduct during the public sale. No evidence in the record supports a reasonable inference that McCready's "loss [of the value of the loan contract] comes from acts that reduce output or raise prices to consumers." *Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992); *see also Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150*, 433 F.3d 1024, 1031 (7th Cir. 2006).

Even if McCready could establish antitrust injury, he still fails to establish antitrust standing because he is not the party "who can most efficiently vindicate the purposes of the

antitrust laws" in this case. *See Kochert*, 463 F.3d at 718-19. Antitrust standing depends on such factors as: (1) the causal connection between the antitrust violation and harm to plaintiff; (2) improper motive; (3) whether the injury is of the type Congress sought to redress; (4) speculative nature of damages; and (5) the risk of duplicative recoveries and complex damages apportionment. *Id.; see also Midwest Gas Servs., Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 710 (7th Cir. 2003).

McCready is not the party who can most efficiently vindicate the purposes of antitrust laws. He is not a competitor with the parties, nor does he claim to be a Corvette consumer; he seeks losses stemming from a loan agreement, *not* the value of the Corvette sold at the public auction. Moreover, the causal connection between McCready's injury and the antitrust violation is simply too tenuous. TSI had no agreement with Hollywood Collision regarding the sale of the Corvette. TSI had no role or knowledge in fixing the car's price at the sale or any involvement in reducing the sales output of similar Corvettes. TSI was not even present at the sale. Not only is there a disconnect between TSI's conduct and McCready's purported losses, but even if McCready was in fact excluded from the May 12, 2003 public sale, there is no connection with the claimed losses. McCready does not have antitrust standing. *See, e.g., Kochert*, 463 F.3d at 719.

## B. *Remaining Claims*

28 U.S.C. § 1367(c)(3) allows the court to decline to exercise supplemental jurisdiction over a claim if it dismisses all federal claims. *See, e.g., Green v. Harrah's Illinois Corp.*, No. 03 C 2203, 2004 WL 1102272, at *5 (N.D. Ill. Apr. 30 2004) (St. Eve, J.); *PS Promotions, Inc v. Stern*, No. 97 C 3742, 2000 WL 283092, at *1 (N.D. Ill. Mar. 8, 2000) (Pallmeyer, J.).

McCready's complaint alleges subject matter jurisdiction under 15 U.S.C. §§ 1-37a, *et seq.,* and 28 U.S.C. §§ 1331, 1337, and 1367. Having resolved the only federal issue, the court declines to exercise supplemental jurisdiction over the remaining state claims. Accordingly, the remaining state law claims are dismissed for lack of subject matter jurisdiction. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("[I]f the federal claims are dismissed before trial, ... the state claims should be dismissed").

## V. CONCLUSION

For the reasons stated above, TSI's motion for summary judgment on McCready's Sherman Act claim is granted. McCready's remaining claims are dismissed for lack of jurisdiction.

ENTER:

June 16, 2008

Suzanne B. Conlon
United States District Judge